E-FILED
Friday, 11 October, 2019  01:33:47 PM
Clerk, U.S. District Court, ILCD

AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Central District of Illinois

FILED

OCT 11 2019

CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. 19-MJ-7209
)
Black wireless TCL LX Phone including sim card )
numbered TF256PSIMV97N, 891480000048882273017 )
more particularly described on Att. A )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
Black wireless TCL LX Phone with sim card numbered TF256PSIMV97N, 891480000048882273017 more particularly described on Att. A. Device is currently located at the U.S. Marshal Service Ofc, 600 E Monroe, Springfield IL 62701

located in the _____ Central _____ District of _____ Illinois _____ , there is now concealed *(identify the person or describe the property to be seized):*
See Att. B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
| --- | --- |
| 18 U.S.C. § 2250, and 2252A | Relating to material involving the sexual exploitation of minors |

The application is based on these facts:

See Affidavit of Thomas Greiner, Deputy U.S. Marshal

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

s/ Thomas Greiner

_____
*Applicant's signature*

Thomas Greiner, Deputy U.S. Marshal
*Printed name and title*

s/ Eric I. Long

Sworn to before me and signed in my presence.

Date: _____ 10/11/2019 _____

_____
*Judge's signature*

City and state: Urbana, Illinois

Eric I Long, Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Thomas Greiner, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Deputy with the United States Marshals Service and have been with the Service for nine years.  I graduated from the six-week, United States Marshals Academy, and the thirteen-week, Criminal Investigators Program at the Federal Law Enforcement Training Center in 2011. I am assigned to the Sex Offender Investigations Branch of the United States Marshals Service. One of my responsibilities is to investigate crimes involving individuals who are convicted sex offenders and have failed to register as required by Title 18 United States Code, Section 2250(a), also  known as the Adam Walsh Child Protection and Safety Act of 2006. I have also spoken with and have been advised by other agents and agencies regarding sexual offender registration requirements, investigations and their investigative techniques.

3.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4.     The property to be searched is described as a black wireless TCL LX Phone including sim card numbered "TF256PSIMV97N" ,"891480000048882273017", referred to herein as the "Device." The Device is currently located at the U.S. Marshal Service Office, 600 E Monroe, Springfield, IL 62701. The applied-for warrant would authorize the seizure and forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## STATUTORY AUTHORITY

5.     This investigation concerns alleged violations of 18 U.S.C. § 2250, and 2252A, relating to material involving the sexual exploitation of minors.

   a. 18 U.S.C. § 2250(a) prohibits sex offenders, as defined by the Sex Offender Registration and Notification Act by reason of a conviction under Federal law … from knowingly failing to register or update a registration as required by the Sex Offender Registration and Notification Act;

   b. 18 U.S.C. § 2250(d) increases the penalty from up to 10 years imprisonment, to no less than five years up to 30 years imprisonment, if a non-compliant sex offender commits a crime of violence,[1] including possession, receipt, or distribution of child pornography. Further, this crime of violence shall be in addition and consecutive to any violation for failure to register.

---

[1] The term "crime of violence" means— (A)an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another; (B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense; or (C) any felony under chapter 77, 109A, 110, or 117. 18 U.S.C. § 3156(a)(4).

    c. 18 U.S.C. § 2252A(a)(2) prohibits knowingly receiving or distributing any child pornography that has been mailed or shipped or transported in interstate or foreign commerce by any means, including by computer.

    d. 18 U.S.C. § 2252A(a)(5)(B) prohibits a person from knowingly possessing any book, magazine, periodical, film, videotape, computer disk, or other material that contains an image of child pornography that has been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, shipped or transported in interstate or foreign commerce by any means, including by computer.

## PROBABLE CAUSE

6.    On December 13, 2018, Greene was convicted of a sex offense as defined in 34 U.S.C. § 20911, *State of Tennessee v. Shay Greene*, Case No. 114523, in the 6th Judicial District Court in Knox County, Tennessee after being found guilty of Sexual Exploitation of a Minor, in violation of Tennessee State Code 39-17-1003. According to court documents supporting this conviction, Greene was engaged in an inappropriate online relationship with a minor and requested nude photographs of the minor. The minor victim confirmed that she sent nude photographs of herself to Greene during their online conversations and that they were engaged in a "BDSM" (bondage, dominant, sadistic, and masochistic) relationship. Law enforcement officers engaged in an undercover sting operation to meet Greene, who believed he was meeting the minor for the purposes of sexual activity. Greene arrived and was arrested. Greene admitted that he requested nude photographs and sexually explicit videos of the minor victim after learning she was a minor, and admitted to masturbating to the images he received. Law enforcement

3

searched Greene's cellphone and discovered ten images and one video of suspected child pornography/erotica.

7.     Greene was released from incarceration for his Tennessee sex offense on March 13, 2019.  As a result of his conviction, Greene is a sexual offender. The Tennessee Bureau of Investigation determined that Greene was required to register annually for a period of 10 years, not including his term of incarceration or the subsequent post-conviction supervised release. On March 14, 2019, Greene completed his initial sex offender registration.  The form provided Greene notice of his legal obligations as a sex offender, including requirements that he update his sex offender registration upon establishing a new address.  The form further warns that any person who fails to register as required shall be subject to criminal penalties, including federal charges pursuant to 18 U.S.C. § 2250, punishable by up to 10 years imprisonment, which may be independent of any additional state law violations.

8.     Greene is classified as at least a Tier I offender. 34 U.S.C. § 20911(2) Therefore Greene is required to register for 15 years from the date of his conviction (excluding any time he was in custody), including specifically from June 4, 2019, through the present. 34 U.S.C. § 20915(a)(1).

9.     On July 10, 2019, Deputy U.S. Marshal Quentin Knobloch located a public Facebook page with the profile name "Christopher Wolfe." DUSM Knobloch compared the profile picture of this account to a known photograph of Shay Greene from National Sex Offender Registry website and positively identified Greene.

4

10.     On July 16, 2019, DUSM Knobloch served a search warrant to Facebook for the contents of Christopher Wolfe's (C.W.) Facebook page. Facebook returned a 703 page document on August 8, 2019.  DUSM Knobloch noted the following items of relevance from C.W.'s Facebook account:

a.  The search warrant results include data between June 4, 2019, and August 7, 2019.

b.  C.W. makes multiple references about living in the Danville area and connected with friends who also reside in the Danville area.

c.  Between June 6, 2019 through June 9, 2019, C.W. started a conversation with an individual with the initials A.M.B. During the conversation, C.W. and A.M.B. make numerous references to landmarks or businesses in the Danville area. After C.W. sexually propositions A.M.B., she says, "I'm not like Danville girls so u might wanna try the next one."

d.  On July 10th, 2019, in a message string between C.W. and C.N., C.N. writes "LOL do you know your crazy as fuck you sent those messages from your oage so there for youll go to jail for tryna buy pussy from a minor." C.W. claims his friend R.M.  took his phone and sent the message.

e.  On June 6th, 2019, in a message string between C.W. and C.D., C.W. sends C.D. a picture of a large amount of U.S. Currency. C.D. responds "Wow OMG". C.W. writes "Yeah you get some after I get some." C.D. writes

"Yeah I promise you." C.W. responds, "You gonna blow me" and requests a sexually explicit image, "Yeah. Send me a pic of them titties."

11.    On August 14, 2019, United States Magistrate Judge Eric I. Long, Central District of Illinois issued an arrest warrant for Shay Greene, a.k.a. Christopher Wolfe based on information provided in a Criminal Complaint that charges him with violations of 18 U.S.C.§ 2250 (19-MJ-7181).

12.    On August 14, 2019, DUSM Knobloch along with other members of the U.S. Marshals Service arrested Greene. Greene was parking a vehicle when he was taken into custody. Upon his arrest Greene asked to retrieve his cellphone from the front seat of the Dodge truck he was driving. DUSM Knobloch observed a black wireless phone laying on the front seat, DUSM Knobloch presented the phone to Greene and asked him if it was his phone and he stated it was. Greene was transported to Danville Police Department for further questioning. Upon arrival at the police station Greene asked to make a call on his phone. Greene made a call to "Andrea Sweetheart" from his contact list, once the call was complete DUSM Knobloch took possession of the phone turned it off and placed it in an evidence bag. Greene was transported to the Vermillion County Jail in the booking area of the county jail. DUSM Knobloch informed Greene his phone would not be in his property and it would be held in evidence. Greene stated there would be "porn" on his phone.

13.    On August 14, 2019, law enforcement learned through interviews of other witnesses that Greene had been living at the 2000 block of E. Willow Street in Danville

since approximately June 30th, 2019, until his arrest. A.B. is the homeowner and has a nine

year old daughter who also lives at the residence full time. Greene possessed and used

the device while residing in a residence with a minor child, unregistered, in violation of

state and federal sex offender registration laws.

## CHILD PORNOGRAPHY COLLECTOR CHARACTERISTICS

14.     Based on my training and experience and the training and experience of

other law enforcement officers that I have consulted with, I know that the following traits

and characteristics are generally found to exist and be true in cases involving individuals

who collect child pornography:

a.     The majority of individuals who collect child pornography are persons
who have a sexual attraction to children.  They receive sexual gratification and
satisfaction from sexual fantasies fueled by depictions of children that are sexual
in nature.

b.     The majority of individuals who collect child pornography collect sexually
explicit materials, which may consist of photographs, magazines, motion
pictures, video tapes, books, slides, computer graphics or digital or other images
for their own sexual gratification.  The majority of these individuals also collect
child erotica, which may consist of images or text that do not rise to the level of
child pornography but which nonetheless fuel their deviant sexual fantasies
involving children.

c.     The majority of individuals who collect child pornography often seek out
like-minded individuals, either in person or on the Internet, to share information
and trade depictions of child pornography and child erotica as a means of
gaining status, trust, acceptance and support.  This contact also helps these
individuals to rationalize and validate their deviant sexual interest and
associated behavior.  The different Internet-based vehicles used by such
individuals to communicate with each other include, but are not limited to, P2P,

e-mail, e-mail groups, bulletin boards, IRC, newsgroups, instant messaging, and other similar vehicles.

d.      The majority of individuals who collect child pornography maintain books, magazines, newspapers and other writings, in hard copy or digital medium, on the subject of sexual activities with children as a way of understanding their own feelings toward children, justifying those feelings and finding comfort for their illicit behavior and desires.  Such individuals rarely destroy these materials because of the psychological support they provide.

e.      The majority of individuals who collect child pornography often collect, read, copy or maintain names, addresses (including e-mail addresses), phone numbers, or lists of persons who have advertised or otherwise made known in publications and on the Internet that they have similar sexual interests.  These contacts are maintained as a means of personal referral, exchange or commercial profit.  These names may be maintained in the original medium from which they were derived, in telephone books or notebooks, on computer storage Device, or merely on scraps of paper.

f.      The majority of individuals who collect child pornography rarely, if ever, dispose of their sexually explicit materials and may go to great lengths to conceal and protect from discovery, theft, and damage their collections of illicit materials. They almost always maintain their collections in the privacy of their homes or other secure location.

15.     Greene engaged in conversations with females on social media messaging applications, and solicited sexually explicit images.  He was an unregistered sex offender living with a minor child.  I know, based on my training and experience that his conduct is consistent with a collector of child pornography.

<u>**TECHNICAL TERMS**</u>

16.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a. **Wireless telephone**:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. **Digital camera**:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

c. **Internet**: The Internet is a global network of computers and other electronic Device that communicate with each other.  Due to the structure of the Internet, connections between Device on the Internet often cross state and international borders, even when the Device communicating with each other are in the same state.

17.    Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as a digital storage device for a Digital Camera and Wireless telephone. In my training and experience, examining data stored on a device of

this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

<u>ELECTRONIC STORAGE AND FORENSIC ANALYSIS</u>

18.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

19.     There is probable cause to believe that things that were once stored on the Device may still be stored there, for at least the following reasons:

a.  Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.  Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or

10

application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

20.    *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

e. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

f. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

g. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

h. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a

11

computer behaves.   Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

i.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

21.   *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant.   The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

22.   *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.   Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

23.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

s/ Thomas Greiner

Thomas Greiner, Deputy U.S. Marshal
United States Marshal Service

Subscribed and sworn to before me
on October 11, 2019.

s/ Eric I. Long

ERIC I. LONG
UNITED STATES MAGISTRATE JUDGE

13

## ATTACHMENT A

The property to be searched is a black wireless TCL LX Phone including sim card numbered "TF256PSIMV97N" ,"891480000048882273017", referred to herein as the "Device." The Device is currently located at the U.S. Marshal Service Office, 600 E Monroe, Springfield, IL 62701.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records on the Device described in Attachment A that relate to violations of **18 U.S.C. § 2250 and 18 U.S.C. § 2252A** and involve Shay Greene, including:

   a. All records on the Device described in Attachment A that relate to violations of Title 18, United States Code, Section 2250 and 2252A and involve Shay Greene, including:

> 1. Minor females
> 2. Travel to and from Illinois, or within Illinois
> 3. Sexual conduct or activity
> 4. Visual depictions of sexual conduct or activity involving adults or minors or that appear to involve minors
> 5. Any text messages, email messages, or other communication involving minors or that appear to solicit minors to engage in sexual activity.

   b. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

   c. Records evidencing the use of the Internet Protocol address to communicate with any minors, or websites involving in sharing or trading child pornography including:

   d. records of Internet Protocol addresses used;

   e. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the

user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.